MARSHALL BRACE *vs.* ALLEN S. YALE.

The owner of a mill, situated upon a small stream, by erecting a reservoir dam a short distance above, and exercising control of the water of the stream, under claim of right, by means of gates built in the reservoir dam, drawing more or less than the natural flow of the stream, as he has occasion, for more than twenty years uninterruptedly, may acquire a right so to use the water, as against the intermediate owners of the land over which the stream passes; and may maintain an action to recover damages against such an intermediate owner, who substantially interferes with this right.

TORT to recover damages for interrupting the flow of water to the plaintiff's mill in Stockbridge.

It was agreed, in the superior court, that the plaintiff was owner of an ancient mill in Stockbridge, used by him and those under whom he claims for upwards of sixty years as a saw-mill. About one hundred rods above the milldam a reservoir dam was situated, which has been maintained and used of right for upwards of forty-five years by the plaintiff and those under whom

he claims, for supplying and operating the mill. About the year 1824 an oil-mill was built above the plaintiff's mill, with an overshot wheel, but the use of the water did not materially impede the flow of the stream to the plaintiff's mill. In 1851 the defendant became the owner of the oil-mill, and in 1854 built a new stone dam for it, higher than the former dam; he also became the owner of land upon the stream between the reservoir dam and the plaintiff's mill.

The plaintiff ordinarily used his reservoir by opening the gate in the morning, and it would require about two days' time to draw out the water therefrom, no water running in. If unobstructed by the intervening dam, the water would flow to the plaintiff's mill in about twenty minutes, but, owing to the defendant's dam and operations, the water was often kept back two hours and a half, in consequence of filling or refilling said dam. When the gate of the reservoir dam was closed, no water flowed in the stream below except such as leaked through or ran over the dam. In consequence of the defendant's operations, large quantities of water were discharged and wasted, because not wanted by the plaintiff. The defendant, when his pond was drawn down, by shutting his gates stopped the water from flowing to the plaintiff's mill until the defendant's pond was again filled; but the defendant used no more water than was advantageous for the working of his mill.

The plaintiff introduced evidence showing that hindrances in working his mill always occurred when the defendant worked his mill; the hindrance being some days half of the time.

It was agreed that if, upon the above facts, the plaintiff should be found entitled to recover, his damages should be assessed by a jury, or an assessor to be agreed upon. Judgment was rendered for the plaintiff, and the defendant appealed to this court.

*H. W. Bishop & M. Wilcox,* for the defendant. The defendant did no more than as a riparian owner, and owner of a mill privilege on his own land, he had a right to do. *Gould* v. *Boston Duck Co.* 13 Gray, 442. *Thurber* v. *Martin,* 2 Gray, 394. *Barrett* v. *Parsons,* 10 Cush, 367. *Dryden* v. *Jepherson,* 18 Pick. 385 *Bliss* v. *Rice,* 17 Pick. 23. *Whaler* v. *Ahl,* 29 Penn. State R. 98

*Hartzall* v. *Sill*, 12 Penn. State R. 248. The plaintiff had ac quired no easement in the defendant's land by grant, prescription or prior occupancy. The defendant is entitled to the improvement and advantages of the reservoir dam, if there be any, without paying compensation or damages. *Tourtellot* v. *Phelps*, 4 Gray, 370–374.

*I. Sumner*, for the plaintiff.

BIGELOW, C. J. The relative rights of different riparian proprietors, on the same stream or watercourse, to the use and enjoyment of the current, as it runs through their respective lands, for the purpose of driving mills and machinery, and for other hydraulic purposes, and the mode in which such use and enjoyment are to be regulated, so that the rights of adjoining proprietors may not be infringed, are fully stated and explained in *Gould* v. *Boston Duck Co.* 13 Gray, 442, and cases there cited. But this right or corporeal hereditament, which is embraced within or appertains to the ownership of the land over and through which a watercourse runs, is subject to the same incidents as all other interests in real property. It may be conveyed absolutely, or its use may be modified or restricted by grant; so, too, it may be lost or acquired either wholly or in part by an adverse user sufficiently long, exclusive and notorious, to furnish adequate grounds for the presumption of a grant. Angell on Watercourses, § 210. *Williams* v. *Nelson*, 23 Pick. 141. *Gould* v. *Boston Duck Co. ubi supra*, 451.

A careful consideration of the facts of this case leads to the conclusion that the plaintiff and those under whom he claims title have acquired, by long continued adverse user, the right to control and regulate the current of water between the dam at the mill owned and occupied by him and the reservoir dam situated one hundred rods above on the same stream, so far that he has acquired the right to retain the water in his reservoir, and prevent it from flowing in the natural channel, not only for the purpose of filling the reservoir, but also in order to gather therein a quantity of water which he can draw out at such times and in such quantities as may be convenient and necessary for the operating of his machinery in the mill situated on the lower dam, until all the water in the reservoir is exhausted.

It is doubtless true that to establish the presumption of a grant of a right or servitude or easement over the land of another, or a modification or change of a corporeal hereditament thereto belonging, it must appear that the use or enjoyment has not been permissive only. It must be shown to have been under a claim of right, and inconsistent with or contrary to the interests and adverse to the title of the original owner of the land • that is, it must have been such a use that it is difficult or impossible to account for it except on the presumption of a grant from the original owner. If the use or enjoyment has been consistent with the existence of the right or title of the latter, no such presumption arises. Thus, the erection of a dam across a stream of water to raise a head for the purpose of driving wheels and machinery in a mill, and the cutting of canals, sluices and water ways to conduct, apply and discharge the water, although they may change in some degree the natural flow of the stream and cause a temporary obstruction to the passage of the water, yet, if they do not essentially affect the reasonable use of the current by riparian proprietors above and below for similar purposes, would not be inconsistent with the rights of such proprietors in the stream, and could not be deemed to confer any right or to take away any title or privilege. So, too, the erection of a dam for the purpose of forming a reservoir by flowing a large tract of land, by which the water would be obstructed only until such reservoir should be filled, and would then resume its natural flow, could not be deemed to be adverse or inconsistent with the rights of other proprietors below on the same stream. The obstruction in such case would be only slight and temporary, and would afford no ground for a presumption that any right of others to the use of the stream had been thereby impaired or lost. *Pitts* v. *Lancaster Mills*, 13 Met. 156.

But in the case at bar the plaintiff and his grantors have made a very different use of the water in the stream. The upper dam was not intended or used by them merely for the purpose of collecting water in a reservoir from which it was to flow in the natural channel *ut currere solebat*, occasioning no obstruction or hindrance, except such as might occur during the time

necessary to fill the pond which the dam was designed to create. From the facts agreed it appears that the stream is a small one, and that the ordinary flow of the water, especially in dry seasons, is insufficient to operate the plaintiff's mill and machinery. The upper or reservoir dam was constructed for the purpose of holding back the water, so that the owner of the plaintiff's mill might draw it from the pond when it was necessary or convenient to carry the machinery in his mill. This was done by means of gates which were opened when the plaintiff's mill was in operation. These, when shut, prevented any water from passing down the natural channel, except that which leaked through, or, in seasons when the water in the stream was abundant, run over the dam. The amount of water drawn through the gates has depended on the quantity needful to carry the machinery which the plaintiff has had occasion to use in his mill; and the kind of work done in the mill has been regulated by the quantity of water in the reservoir. The plaintiff has been accustomed to raise and shut the gates of the reservoir according to the use which he may have desired or may have been able to make of the water in operating his machinery. The reservoir has thus been used to collect water for the immediate purpose of operating the plaintiff's mill, and the water in it has been drawn out, either partly or wholly, whenever it was required for the working of the machinery of the plaintiff. This mode of controlling and regulating the use of the water in the stream, as it essentially interrupted the original and natural flow of the water, and interfered materially with the right of the riparian owners of lands between the reservoir dam and the plaintiff's mill to appropriate and use the water, was in its nature adverse, and, having been continued under a claim of right for forty-five years and upwards, affords a conclusive presumption of a grant, from such intermediate owners to the plaintiff and his grantors, of such appropriation and use.

The only remaining question in this case is, whether the defendant has encroached on the prescriptive right of the plaintiff to this use of the stream Upon this point we can entertain no doubt. As a riparian proprietor, he has lost the right to use

the water in its natural flow or passage through his land, by the long continued adverse user of the plaintiff and those under whom he claims, not only to control the quantity of water which should be allowed to pass down the natural channel through his land, but also to regulate the time when it should be drawn out of the reservoir, in order to pass down to the plaintiff's mill. He must therefore use the water in subordination to this superior right of the plaintiff. He is not to be deprived of the privilege of making any appropriation of the stream, but only of such use of the water as may be inconsistent with that which the plaintiff has acquired, or may operate injuriously on the working of his mill and machinery.

If it be asked what is the measure or standard by which the defendant's right is to be regulated and governed, the answer is obvious. He can make a reasonable appropriation of the water as it is let down from the reservoir and passes through his land, having regard to the proper and reasonable use by the plaintiff of the prescriptive right which he has acquired. He can neither retard the water so as to prevent the plaintiff's mill from running for any considerable period of time when the water is let down from the reservoir, nor can he hold it back for the purpose of collecting water which is to be drawn down in such quantities that the plaintiff cannot by the reasonable and ordinary use of his mill properly appropriate and apply it to the driving of his works, and thus cause the water to run to waste. On the facts agreed, it is apparent that the defendant has made such an unreasonable and unlawful appropriation of the water to the hindrance and injury of the plaintiff's works. He could not lawfully hold back the water as it flowed from the reservoir for the purpose of filling and refilling the pond created by the erection of the new stone dam near his own mill, as set forth in the agreed facts ; nor could he properly let down the water in such quantities that the plaintiff could not appropriate it to the proper operation of his mill, whereby the water ran to waste. Yet it appears that he has done so to such an extent that the plaintiff's mill is interfered with and hindered on some occasions so that it cannot be operated for half the time that it was formerly

accustomed to run. Under these circumstances, there can be no doubt that the rights of the plaintiff have been palpably infringed. It is immaterial that the defendant uses no more water than is advantageous for the working of his mill. He is bound to use the water with a due regard to the rights of others, and not merely with reference to the profitable employment of his own works.

The case at bar differs from *Gould* v. *Boston Duck Co. ubi supra.* In that case, there was no prescriptive right in the plaintiff to maintain a reservoir in connection with a mill, for the purpose of regulating the time and mode in which the water should flow in the stream and be used in operating such mill. But it was the ordinary case of a reservoir dam erected only for the purpose of creating a uniform supply of water in a stream, which caused a temporary obstruction to the current of the water, but which did not permanently obstruct or hinder its natural flow in the ordinary channel. *Judgment for the plaintiff.*